S04G1152. COX v. GARVIN et al.
(607 SE2d 549)

HINES, Justice.

We granted certiorari in *Garvin v. Secretary of State,* 266 Ga. App. 66 (596 SE2d 166) (2004), to determine whether the Court of Appeals erred in concluding that the term "willfully" as used in OCGA § 10-5-13 (a) (1) (A) (iv) requires a knowing and intentional violation of the Georgia Securities Act of 1973 ("Act"), OCGA § 10-5-1 et seq. For the reasons which follow, we find that the Court of Appeals set an incorrect standard for establishing a willful violation in order to impose an administrative penalty under OCGA § 10-5-13 (a) (1) (A) (iv); the term "willfully" requires proof only that the defendant intended to commit the conduct which is violative of the Act. Accordingly, we reverse.

The following facts are set forth in the opinion of the Court of Appeals. In 1999, Garvin, acting on behalf of Bee Communications, Inc. ("Bee"), sold Kommor five coin-operated payphones for $7,000 each. According to Kommor, she agreed to pay $35,000 for the payphones because Garvin sold them to her as part of an investment venture whereby she purchased the payphones from Bee and then, via an equipment lease program, leased them to ETS Payphones, Inc. ("ETS") for five years. Garvin told Kommor that ETS would operate and maintain the payphones, and that she would receive a fixed monthly income of $75 from each payphone, regardless of the revenue generated by each payphone. However, ETS declared bankruptcy in 2000, and Kommor lost her investment.

Garvin was not registered to sell securities in Georgia pursuant to OCGA § 10-5-3, nor were the contracts involved in the investment sold to Kommor registered in Georgia as securities under OCGA

§ 10-5-5. Garvin contended that no registration was required because the contracts were not securities under the Act.

The Court of Appeals affirmed the superior court's affirmance of the determination by the Commissioner of Securities that by selling and promoting the contracts as an investment venture, the contracts were securities under the Act. However, the Court of Appeals concluded that the term "willfully" in OCGA § 10-5-13 (a) (1) (A) (iv) required a knowing and intentional violation of the Act in order for the civil penalties authorized therein to be imposed, reversed that portion of the superior court's judgment affirming the determination that Garvin's conduct was willful and the resultant penalty, and remanded the case with the direction that the record on that issue be reconsidered in light of its determination of the legal standard of "willfully." *Garvin*, supra at 71-74 (2).

The Court of Appeals's conclusion was premised upon a flawed analysis. Section 10-5-13 of the Act provides, in relevant part, for the imposition of administrative sanctions:

> (a) Whenever it may appear to the commissioner, either upon complaint or otherwise, that any person has engaged in or is engaging in or is about to engage in any act or practice or transaction which is prohibited by this chapter or by any rule, regulation, or order of the commissioner promulgated or issued pursuant to any Code section of this chapter or which is declared to be unlawful under this chapter, the commissioner may, at his or her discretion, act under any or all of the following paragraphs:

> (1) Impose administrative sanctions as provided in this paragraph:

> (A) Subject to notice and opportunity for hearing in accordance with Code Section 10-5-16, unless the right to notice is waived by the person against whom the sanction is imposed, the commissioner may: . . .

> (iv) Issue an order against an applicant, registered person, or other person who *willfully* violates this chapter, imposing a civil penalty up to a maximum of $50,000.00 for a single violation or up to $500,000.00 for multiple violations in a single proceeding or a series of related proceedings; . . .

(Emphasis supplied.)

Acknowledging that the Act does not define the term "willfully," the Court of Appeals relied on *Greenhill v. State*, 199 Ga. App. 218

(404 SE2d 577) (1991), to determine that "willfully" in OCGA § 10-5-13 (a) (1) (A) (iv) means knowingly and intentionally violating the Act. *Garvin,* supra at 71 (2). It reasoned that such definition of the term was required because it had held in *Greenhill* that "willfully" as used in the felony criminal provisions of OCGA § 10-5-24[1] meant knowingly and intentionally violating the Act. Id. However, in *Greenhill,* the Court of Appeals upheld a jury charge in a criminal prosecution under OCGA § 10-5-24 that instructed the jury that "willful means knowingly and intentionally *committing the acts* that constituted the violation." (Emphasis supplied.) *Greenhill* at 220 (3). Thus, *Greenhill* actually sanctioned a definition of "willfully" that requires only that a party knowingly and intentionally commit the acts that constitute the violation, not that the person knowingly intend to violate the Act. Consequently, *Greenhill* fails to provide authority for the holding that a party must knowingly violate the Act in order to be subject to a civil penalty under OCGA § 10-5-13 (a) (1) (A) (iv).

Another portion of the Act also sheds light on the appropriate standard for the imposition of administrative penalties. The term "willfully" appears in OCGA § 10-5-4 (a) (2).[2] This portion of the Act contains similar provisions to Section 412 of the Uniform Securities Act (2002),[3] which outlines administrative sanctions for a party who "willfully violated or willfully failed to comply with [the Uniform Securities Act]."[4] Unif. Sec. Act (2002) § 412 (d) (2). The Official Comment relating to Section 412 states that in regard to the term

---

[1] OCGA § 10-5-24 (a) provides:
Any person who shall willfully violate any provision of this chapter shall be guilty of a felony and, upon conviction thereof, shall be punished by a fine of not more than $500,000.00 or imprisonment for not less than one and not more than five years, or both.

[2] OCGA § 10-5-4 (a) (2) provides:
(a) The commissioner, by order, may deny, suspend, or revoke a registration, limit the securities or investment advisory activities that an applicant or registered person may perform in this state, bar an applicant or registered person from association with a registered dealer, limited dealer, or investment adviser, or bar a person who is a partner, officer, director, or a person occupying a similar status or performing a similar function for an applicant or registered person from employment with a registered dealer, limited dealer, or investment adviser, if the commissioner finds that the order is in the public interest and that the applicant or registered person or, in the case of a dealer, limited dealer, or investment adviser, a partner, officer, or director, a person occupying a similar status or performing similar functions, or a person directly or indirectly controlling the dealer, limited dealer, or investment adviser: . . .
(2) Has *willfully* violated or *willfully* failed to comply with this chapter, a prior enactment, or a rule promulgated by the commissioner under this chapter or a prior enactment; . . .
(Emphasis supplied.)

[3] The Uniform Securities Act (2002) was drafted by the National Conference of Commissioners on Uniform State Laws.

[4] Unif. Sec. Act (2002) § 412 (d) (2) reads:

"willfully," "[a]ll that is required is proof that the person acted intentionally in the sense that the person was aware of what he or she was doing. Proof of evil motive or intent to violate the law or knowledge that the law was being violated is not required." Unif. Sec. Act (2002) § 508 cmt. Such an interpretation of "willfully" is consistent with the federal construction of the term in the context of the Securities Exchange Act of 1934. The federal courts have held that, " 'willfully' simply requires the intentional doing of the wrongful acts — no knowledge of the rule or regulation is required." *Wonsover v. SEC*, 205 F3d 408, 414 (2000); *United States v. O'Hagan*, 139 F3d 641, 647 (1998). See also *United States v. Brown*, 578 F2d 1280, 1284 (1978).

Likewise, numerous state courts in interpreting the term "willfully" in the context of securities statutes have refused to adopt a requirement that the person intended to violate the law; the key is that the person intended to do the act prohibited by statute.[5]

Finally, there are strong policy reasons to reject the standard adopted by the Court of Appeals. The Act is remedial in nature, intended for the protection of investors; therefore, it must be broadly and liberally construed to effectuate its aim. *Dunwoody Country Club &c. v. Fortson*, 243 Ga. 236, 242 (253 SE2d 700) (1979). The definition of "willfully" set forth by the Court of Appeals would frustrate the purpose of safeguarding investors by making it very difficult to impose civil penalties for a violation of the Act. Assertions that the accused party did not knowingly and intentionally sell securities in violation of the Act or that the party believed the securities were exempt from registration would be virtually impossible to overcome; a seller of unregistered securities would likely be able to avoid a finding of "willfulness" unless the seller had been the subject of a prior action for selling virtually the same securities.

The Court of Appeals's interpretation of "willfully" in this case is contrary to its own precedent, the weight of federal and state authority, and the goal of investor protection. Accordingly, the judgment of the Court of Appeals is reversed.

---

willfully violated or willfully failed to comply with this [Act] or the predecessor act or a rule adopted or order issued under this [Act] or the predecessor act within the previous 10 years; . . .

[5] See, e.g., *State v. Andresen*, 773 A2d 328 (Conn. 2001); *State v. Montgomery*, 17 P3d 292 (Idaho 2001); *State v. Irons*, 574 NW2d 144 (Neb. 1998); *State v. Dumke*, 901 SW2d 100 (Mo. App. 1995); *State v. Ribadeneira*, 817 P2d 1105 (Kan. App. 1991); *State v. Kershner*, 801 P2d 68 (Kan. App. 1990); *Hayes v. State*, 507 S2d 982 (Ala. Crim. App. 1986); *People v. Feno*, 154 Cal. App. 3d 719 (201 Cal. Rptr. 513) (1984); *People v. Morrow*, 682 P2d 1201 (Colo. App. 1983); *State v. Fries*, 337 NW2d 398 (Neb. 1983); *Buffo v. State*, 415 S2d 1158 (Ala. 1982); *State v. Hodge*, 460 P2d 596 (Kan. 1969).

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

OCGA § 10-5-13 (a) (1) (A) (iv) authorizes Secretary of State Cox, acting in her capacity as the Commissioner of Securities (Commissioner), to

> [i]ssue an order against an applicant, registered person, or other person who *willfully violates* [the Georgia Securities Act of 1973 (Act)], imposing a civil penalty up to a maximum of $50,000.00 for a single violation or up to $500,000.00 for multiple violations in a single proceeding or a series of related proceedings. . . . (Emphasis supplied.)

The issue presented for resolution is the meaning of the statutory phrase "willfully violates." The Court of Appeals held that it means that "there must be a knowing and intentional violation of the Act." *Garvin v. Secretary of State*, 266 Ga. App. 66, 71 (2) (596 SE2d 166) (2004). Today, a majority of this Court reverses, concluding that "willfully violates" "requires only that a party knowingly and intentionally commit the acts that constitute the violation, not that the person knowingly intend to violate the Act." Majority opinion, p. 905. Because I believe that the Court of Appeals correctly defined "willfully violates," I must respectfully dissent.

"Willful" means "[v]oluntary and intentional, but not necessarily malicious. . . ." Black's Law Dictionary (7th ed.), p. 1593. Derivations of that term appear only twice in OCGA § 10-5-13 (a) (1), which statute deals with the authority of the Commissioner to impose administrative sanctions. As noted, subparagraph (A) (iv) of the statute refers to the Commissioner's power to sanction one who "willfully violates" a provision of the securities Act. Subparagraph (C), on the other hand, specifies that

> [f]or the purpose of determining the amount or extent of a sanction, if any, to be imposed under subparagraph (A) of this paragraph, the [C]ommissioner shall consider, among other factors, the . . . *willfulness of the conduct* constituting a violation of this chapter. . . . (Emphasis supplied.)

Thus, only subparagraph (C) expressly focuses on the willfulness of a party's conduct comprising the securities violation. In contrast, subparagraph (A) (iv) references the willfulness of the violation itself.

"Willful conduct" and a "willful violation" are not synonymous. "Willful conduct" is a neutral term which denotes acts that are

voluntary and intentional. Thus, the concept of "willful conduct" does not incorporate a specific requirement that, in addition to committing a voluntary and intentional act, the perpetrator knew or should have known that he or she was violating a statute. On the other hand, "willful violation" is a more culpable term. It "constitutes something more than a violation of [a statute]. [Cit.]" *Lee v. Nat. Bank & Trust Co.*, 153 Ga. App. 656, 657 (266 SE2d 315) (1980). "Willful violation" requires a showing that the actor " 'either knew or showed reckless disregard for the matter of whether [his or her] conduct was prohibited by the statute.' [Cit.]" *Lockaby v. Top Source Oil Analysis*, 998 FSupp. 1469, 1471 (II) (N.D. Ga. 1998) (construing the Fair Labor Standards Act). "Where different language is used in different parts of a statute, it is presumed that the language is used with a different intent. [Cits.]" 73 AmJur2d, Statutes, § 131, p. 341. Therefore, "willfully violates," as used in subparagraph (A) (iv), means something different than "willfulness of the conduct," as used in subparagraph (C).

However, the majority holds that "willful violation" has the same meaning as "willful conduct." Under its construction of subparagraph (A) (iv), the Commissioner is authorized to impose a civil penalty based upon a mere showing of the willfulness of the actor's underlying conduct, even though the General Assembly unambiguously provided that the exercise of that authority is dependent upon a showing of a willful violation of the Act. I submit that such a construction is contrary to the "fundamental rule of statutory interpretation that, within an act, the same words have the same meanings and different words have different meanings. [Cits.]" *Furnes v. Reeves*, 362 F3d 702, 713 (III) (C) (11th Cir. 2004). As the Court of Appeals correctly noted, only subparagraph (A) (iv) specifies that the Commissioner's administrative authority applies in instances involving a "willful violation" of the Act.

> By contrast, nothing in § 10-5-13 (a) (1) limited the cease and desist order issued by the Commissioner against Garvin to wilful violations of the Act. Accordingly, the Commissioner was entitled to issue the cease and desist order whether or not Garvin knowingly intended to violate the Act.

*Garvin v. Secretary of State*, supra at 71 (2). The establishment of an entirely different "willful violation" standard for the assessment of civil penalties under subparagraph (A) (iv) must signify the legislative intent to differentiate the Commissioner's authority to impose those penalties from her power to assess the other administrative sanctions enumerated in subsection (a) (1). Had the General Assembly intended to authorize the Commissioner to impose the civil

penalties specified in subparagraph (A) (iv) based upon the mere willfulness of the conduct, without regard to any knowledge or reckless disregard of a statutory prohibition, then it presumably would not have predicated the exercise of that authority on the willfulness of the violation. However, "[b]y using the terminology contained in the Act the legislature obviously intended that there be some showing that the violation be 'wilful' other than the mere fact of the violation itself." *Martin v. Glenn's Furniture Co.*, 126 Ga. App. 692, 699 (2) (c) (191 SE2d 567) (1972). Thus, the result of today's decision is to rewrite subparagraph (A) (iv), even though " '[w]hen a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it but must construe it according to its terms.' [Cit.]" *Ward v. City of Cairo*, 276 Ga. 391, 394 (2) (c) (583 SE2d 821) (2003). As the Court of Appeals held, subparagraph (A) (iv), when correctly construed, authorizes the Commissioner to assess civil penalties against only those who acted with knowledge of or in reckless disregard for the provisions of the securities Act. See *Martin v. Glenn's Furniture Co.*, supra; *Furnes v. Reeves*, supra; *Lockaby v. Top Source Oil Analysis*, supra. Once the threshold determination of the willfulness of the violation has been made, the Commissioner is then authorized under subparagraph (C) to consider the willfulness of the conduct itself as a factor in determining the exact amount of the penalty.

This construction of "willfully violates" in subparagraph (A) (iv) is consistent with OCGA § 10-5-24 (a), which provides that one who "shall willfully violate" a provision of the securities Act is guilty of a felony and subject to a fine of up to $500,000. As the majority recognizes, *Greenhill v. State*, 199 Ga. App. 218, 220 (3) (404 SE2d 577) (1991) did hold that, in a prosecution for violating OCGA § 10-5-24 (a), the trial court correctly charged the jury "that wilful means knowingly and intentionally committing the acts that constituted the violation. . . ." However, the meaning of "willful," standing alone, is not dispositive here. The question to be resolved in this case is the standard to be applied in determining whether someone "willfully violates" the securities Act. With regard to the meaning of that specific phrase, *Greenhill*, supra at 220 (3), appears to have relied upon "[e]vidence at trial of previous investment plans attempted by appellant show[ing] his awareness of registration requirements. . . ." Such evidence would be irrelevant unless "willfully violates" meant a knowing and intentional violation of the securities Act. Accordingly, I believe that the Court of Appeals correctly cited *Greenhill* in defining the phrase "willfully violates."

Since different words in the same act must be given different meanings, only those who "willfully" violate the securities Act are

subject to the Commissioner's imposition of the civil penalties authorized by subparagraph (A) (iv) of OCGA § 10-5-13 (a) (1). Because the same words in the same act should be given the same meaning, it also follows that only those who are most culpable by virtue of acting with knowledge of or in reckless disregard for the provisions of the Act are subject to a civil penalty assessed by the Commissioner under subparagraph (A) (iv) and to criminal prosecution by the State under OCGA § 10-5-24. The judgment of the Court of Appeals should be affirmed.

DECIDED JANUARY 10, 2005 —
RECONSIDERATION DENIED FEBRUARY 7, 2005.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General, William W. Banks, Jr., Oscar B. Fears III, Assistant Attorneys General, Robin A. Golivesky*, for appellant.
*Browning & Smith, George T. Smith*, for appellees.